UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| ABM BUILDING SOLUTIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No.   5:24-cv-05278-CMC |
| | ) |
| LA HEATING AND AIR LLC, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff ABM Building Solutions, LLC ("ABM"), by its attorneys, brings this action against Defendant LA Heating and Air LLC f/k/a RDB Communications, LLC ("LA Heating") for injunctive relief and damages and states as follows:

**NATURE OF THIS ACTION**

1.      This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with prospective business relations arising out of LA Heating's improper solicitation and poaching of ABM's customer, Orangeburg County School District ("OCSD") in violation of the express terms of the Parties' Master Subcontract Agreement (the "Subcontract") and applicable law.

2.      ABM brings this action to enforce LA Heating's contractual obligations, protect ABM's confidential business and other strategic information, and to redress and enjoin LA Heating's unlawful solicitation of ABM's client, which has caused and will continue to cause ABM to suffer millions of dollars in damages and both actual and threatened irreparable harm that cannot be remedied with monetary relief alone.

1

## PARTIES

3. ABM is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 14141 Southwest Freeway, Sugar Land, Texas 77478.

4. Upon information and belief, LA Heating is a limited liability company organized under the laws of the State of Georgia with its principal place of business located at 48 Stone Road, Carnesville, Georgia, 30521. LA Heating was formerly known as RDB Communications, LLC before filing its name change on March 18, 2024.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the Parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6. This Court has personal jurisdiction over the defendant because, among other things, the defendant resides and regularly transacts business in this judicial District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this action occurred within this District and defendants reside and regularly transact business in this District.

8. Further, the Parties consented to jurisdiction and venue in this District by stipulating in the Subcontract that "all litigation of all claims between [ABM] and [LA Heating] which arise out of this Subcontract shall be brought only in the federal court [district] in which the work is performed."

## FACTUAL BACKGROUND

9. ABM is a company that, among other things, provides contracted building maintenance, repair, and improvement services, including heating, ventilation, and air conditioning ("HVAC") and energy retrofitting to customers throughout the United States.

10. LA Heating is a company that, among other things, provides commercial, industrial, and residential HVAC installation and maintenance services to customers in the southeast United States.

### I.  ABM AND LA HEATING PARTNER FOR THE OCSD PROJECT

11. On or about February 4, 2021, OCSD issued a request for qualifications No. 20-025 ("RFQ") to develop an Energy Services Performance Contracting ("ESPC") Proposal.

12. On or about March 9, 2021, ABM, submitted a statement of qualification to develop the ESPC Proposal.

13. OCSD awarded ABM the contract to perform an investment grade audit of its facilities and develop the ESPC Proposal.

14. ABM, together with its subcontractor partners including LA Heating, developed the original ESPC Proposal valued at over $100 Million, which included HVAC maintenance, installation, and repair work at multiple OCSD facilities, including Edisto High School.

15. Due to the extensive scope and cost of the ESPC Proposal, OCSD selected portions of the overall Proposal to move forward with (the "Project").

16. The Project was divided into separate phases with defined scopes of work.

17. On or about April 12, 2022, OCSD awarded ABM a contract to perform roughly $39.2 Million of the proposed work as Phase 1 of the Project.

18. LA Heating, under its previous name of RDB Communications, LLC, entered into the Master Subcontract Agreement (the "Subcontract") with ABM effective as of May 17, 2022,

for the specific purpose of governing LA Heating's work with ABM for OCSD, including on the Project. A true and accurate copy of the Subcontract is attached as **Exhibit A**.

19. The Subcontract had an original term of twelve months beginning May 17, 2022 (the "Term"), and would, thereafter, remain in full force and effect until formally terminated, stating, "[u]pon expiration of the Term, this Agreement will renew on a month-to-month basis unless terminated by either party upon thirty (30) days' prior written notice." Ex. A at ¶ 38.

20. As part of the Project, ABM, together with LA Heating as subcontractor, performed HVAC and energy retrofitting, repair, and replacement services at Edisto High School.

21. On or about April 27, 2023, OCSD awarded ABM a contract for the second phase of the Project.

22. For its work on Phase 2 of the Project, ABM partnered with LA Heating as its subcontractor and LA Heating performed HVAC maintenance, repair, and replacement services for ABM's client, OCSD.

23. On or around March 1, 2024, OCSD issued an RFP for the third phase of the Project, which included certain HVAC maintenance, repair, and replacement services at Edisto High School.

24. When OCSD released the Phase 3 RFP, OCSD requested that bidding entities include variable refrigerant flow ("VRF") units in proposals for HVAC solutions.

25. ABM's original ESPC Proposal recommended a VRF HVAC solution for Edisto High School, but ABM ultimately submitted a proposal with pricing for "split system" HVAC solutions rather than VRF units, as split system solution would reduce OCSD's costs.

26. Rather than reconfigure its proposal, ABM relied on its cost and engineering calculations it had previously submitted to OCSD.

4

27. OCSD accepted this approach and did not require ABM to re-submit a new bid for the third phase.

28. Believing it could secure the contract for Phase 3 on its own, LA Heating indicated to ABM that LA Heating intended to submit its own bid without ABM.

29. ABM reminded LA Heating of its contractual obligations not to solicit ABM's customers and not to compete with ABM for work for ABM's clients – specifically clients that ABM had introduced to LA Heating – and in response, LA Heating decided not to submit a bid for Phase 3 of the OCSD's Project.

30. Due to confusion about OCSD's technical requirements for Phase 3 of the Project, OCSD reissued the RFP on May 3, 2024.

31. Like the original Phase 3 RFP, ABM relied on its cost and engineering calculations it had previously submitted to OCSD rather than reconfigure its proposal and submit a new bid.

32. OCSD accepted this approach and did not require ABM to re-submit a new bid for the third phase, as OCSD understood the scope, cost, and solutions offered in ABM's proposal.

33. Apparently of the belief that ABM's bid would not be accepted, and needing the work, LA Heating advocated for submitting a bid for work that omitted certain ancillary scope required by local building codes, a practice that ABM believed would expose OCSD to change orders for additional cost to complete the work.

34. For example, LA Heating wanted ABM to resubmit a new bid for the VRF-inclusive scope of work that omitted tasks such as replacing ceiling tiles and electrical panels and lines, which ABM believed would be required for compliance with building and seismic securement codes.

35. Omitting these steps would artificially depress the cost of the bid and increase LA Heating's chances of securing the Phase 3 contract via ABM.

36. ABM disagreed with LA Heating's proposed tactics and declined to submit a bid without all scope required to comply with local codes, and instead maintained ABM's original bid estimate with full transparency with OCSD of what was included in that cost.

37. Rather than abide by its contractual obligations to refrain from competing with ABM on the OCSD Project, LA Heating surreptitiously partnered with a competing contractor, Augusta Chiller Service, Inc. ("Augusta Chiller"), and, upon information and belief, submitted a lower bid intentionally omitting certain work from the proposal and thereby artificially suppressing the true cost of the work in order to win the contract.

38. Upon information and belief, OCSD selected the Augusta Chiller/LA Heating bid for the third phase of the Project, apparently unaware that the work proposed was not code compliant, and thus omitted certain inevitable costs.

39. Unsurprisingly, then, on or about April 17, 2024, LA Heating provided written notice of its intent to terminate the Subcontract, although it purported to do so under Section 25 of the Subcontract (which provides it with no such right) rather than Section 38. In that notice, LA Heating inaccurately stated that its termination "will not affect any existing work" and that it "will complete all work under the MSA." LA Heating further stated that it "is interested in entering into a new MSA with modified terms" and promised to "submit a modified MSA for [ABM's] consideration." Pursuant to Section 38 of the MSA, the termination became effective 30 days later, or on May 17, 2024.

## II.     LA HEATING'S CONTRACTUAL OBLIGATIONS

40.     Paragraph 32 of the Subcontract, which is governed by Georgia law, is entitled "Non-Compete" and includes a customer non-solicitation covenant whereby LA Heating agreed not to compete with ABM by seeking to provide or actually providing services to OCSD in any capacity, including as a subcontractor, both during and for two years after termination of the Subcontract:

> SUBCONTRACTOR acknowledges ABM's substantial time and financial investments associated with development of its existing clients, including the Client which is the subject of this Agreement. SUBCONTRACTOR further acknowledges that by virtue of performing services hereunder it will be placed in contact with such Client or Clients. Accordingly, unless otherwise stated in the Contract Documents, at all times during the term of this Agreement and for a period of two years following termination for any reason, SUBCONTRACTOR and its Affiliates agree not to compete with ABM by seeking to provide or actually providing, in any capacity, the services to ABM's client . . . SUBCONTRACTOR agrees that if, within two years after termination of this Agreement, SUBCONTRACTOR or an Affiliate commences performing services similar to those to be performed under this Agreement, SUBCONTRACTOR shall pay to ABM a development fee equal to twelve (12) times the monthly amount billed to ABM by SUBCONTRACTOR pursuant to this Agreement.

41.     Paragraph 29 of the Subcontract, titled "Confidentiality," requires LA Heating to keep confidential ABM's confidential business, financial, and technical information, including but not limited to specifications and pricing information ABM uses in connection with preparing bids for projects.

42.     Finally, Exhibit 4 to the Subcontract, the ABM Supplier Code of Conduct, incorporated into the terms of the Subcontract, requires LA Heating to "adhere to standards of fair business, advertising, and competition." Ex. A at Exhibit 4.E.2.

43.     Despite the "Non-Compete" provision in Paragraph 32 of the Subcontract, LA Heating, together with Augusta Chiller, submitted a bid in response to the RFP issued by OCSD for the third phase of the Project, a continuation of the services ABM had previously provided to

7

OCSD in connection with the first two phases, and thereby "compete[d] with ABM by seeking to provide or actually providing, in any capacity, the services to ABM's client," OCSD, during the term of the Subcontract (or within two years of the termination of the Subcontract), in violation of Paragraph 32 of the Subcontract.

44. Throughout the duration of the contractual relationship between ABM and LA Heating, LA Heating received and had access to ABM's confidential business information, including but not limited to:

   a. information and knowledge of ABM's plans business strategies; and

   b. information and knowledge of ABM's other proprietary and confidential processes, and procedures, including but not limited to ABM's processes and procedures for responding to OSCD's RFPs.

45. Upon information and belief, LA Heating exploited its knowledge of ABM's analysis of the third phase of the Project associated pricing, calculations, bid procedures, and other processes to underbid ABM and secure the contract for Phase 3.

46. ABM took reasonable measures to maintain the confidentiality of such information, including through the confidentiality provisions of the Subcontract, and that information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means.

47. LA Heating acquired this knowledge solely through its relationship with ABM.

48. Upon information and belief, LA Heating used ABM's confidential information despite its agreement to keep ABM's information confidential, to make a more competitive bid in response to the third-phase RFP soliciting OCSD's business than LA Heating otherwise would have submitted.

49. Upon information and belief, LA Heating's use of ABM's confidential information without ABM's consent resulted in LA Heating, together with its accomplice Augusta Chiller, receiving OCSD's contract for the third phase of the Project.

50. Pursuant to Paragraph 29 of the Subcontract, LA Heating is prohibited from using ABM's confidential information for any purpose without ABM's prior written consent.

51. As a result of performing the first two phases of the OCSD Project since 2022, ABM had both an existing contractual relationship with OCSD and the expectation of an ongoing and future advantageous business relationship with OCSD.

52. LA Heating knew about ABM's contractual relationship with OCSD.

53. As a result of providing services for the OCSD Project under the Subcontract with ABM, in connection with ABM's 2022 and 2023 Agreements with OCSD, LA Heating had knowledge that ABM had an existing and prospective business relationship with OCSD.

54. LA Heating knew that ABM sought to extend its business relationship with, as LA Heating knew that ABM was submitting a competing bid in response to OCSD's RFP for the third phase of the Project.

55. LA Heating knew that, if successful, its misleading conduct in connection with the Augusta Chiller bid would prevent ABM from maintaining its contractual relationship with OCSD, and similarly knew that, if successful, LA Heating's conduct would prevent ABM from maintaining its advantageous business relationship with OCSD, and that as a result, ABM would lose a lucrative contract worth over $5 million dollars over its term, and would irreparably harm the goodwill ABM has built and maintained with OCSD over many years of providing high quality, efficient, cost-effective, and ethical services.

56. LA Heating has not paid ABM the development fee provided for in the Subcontract, which in this case amounts to approximately $6,000,000.00.

57. Upon information and belief, LA Heating used ABM's confidential and proprietary business information, including pricing, calculations, planning and analysis, bid procedures, and other processes, including without limitation information concerning the extent and nature of the work required to complete the third phase of the Project, to solicit OCSD's business.

58. ABM is concerned that LA Heating will continue to compete with ABM in violation of Section 32 of the Agreement and further solicit its other clients, thereby causing irreparable harm to the goodwill ABM has spent decades and tens of millions of dollars building and maintaining.

## COUNT I
### (Breach of Contract: Non-Compete)

59. ABM restates and incorporates herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

60. LA Heating entered into the Subcontract with ABM in which LA Heating agreed not to seek to provide or actually provide, in any capacity, the services LA Heating was performing, namely, HVAC maintenance, installation, and repair work at OCSD facilities, including but not limited to Edisto High School, during and for two years after the termination the Subcontract.

61. The Subcontract is a valid, binding, and enforceable contract between ABM and LA Heating.

62. The Subcontract was in full force and effect until May 17, 2024, when LA Heating's termination of the Subcontract became effective.

63. ABM performed all of its obligations under the Subcontract.

64. At all relevant times beginning May 17, 2022, and until May 17, 2026, LA Heating has been, and continues to be, bound by the Non-Compete provision of the Subcontract.

65. Paragraph 32 of the Subcontract prohibits LA Heating from submitting bids to ABM's customers that LA Heating had performed services for under the Subcontract, including, without limitation, OCSD.

66. LA Heating materially breached Paragraph 32 of the Subcontract by submitting a bid in response to an RFP issued by ABM's customer, OCSD, and ultimately succeeded on its bid to improperly compete and solicit ABM's customer.

67. LA Heating has refused to pay ABM the development fee provided for in the Subcontract in the event LA Heating performs services for ABM's customer.

68. All contracts impose upon each party a duty of good faith and fair dealing. Good faith is an element of every contract.

69. LA Heating is obligated to comply with the substance of Subcontract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

70. The material terms of the Subcontract therefore included the implied covenant of good faith and fair dealing, whereby LA Heating covenanted that it would, in good faith and in the exercise of fair dealing, deal with ABM fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure ABM's rights, existing customer relationships or prospective business relationships.

71. LA Heating has breached the implied covenant of good faith and fair dealing in the Subcontract by:

    a. attempting to solicit and soliciting ABM's customer, OCSD;

      b. using ABM's confidential and proprietary business information to poach ABM's customer.

      c. mischaracterizing the nature and extent of work needed to complete the third phase of the Project to mislead OCSD into rejecting AMB's accurate and transparent bid and accepting Augusta Chiller's bid.

72.    As a direct and proximate result of LA Heating's breaches, ABM has suffered damages in an amount to be determined at trial, including, without limitation, the amount of the development fee and the profits ABM lost as a result of LA Heating improperly competing with ABM for the OCSD Project, and irreparable harm to its goodwill with OCSD.

73.    If LA Heating is permitted to continue soliciting and providing services to ABM's customers in violation of Section 32 of the Agreement, ABM will continue to suffer irreparable harm to the goodwill it has built and maintained with other customers it has partnered with LA Heating to provide HVAC services to.

## COUNT II
**(Breach of Contract: Confidentiality)**

74.    ABM restates and incorporates herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

75.    LA Heating entered into the Subcontract with ABM in which LA Heating agreed not to use ABM's confidential information.

76.    The Subcontract is a valid, binding, and enforceable contract between ABM and LA Heating.

77.    The Subcontract was in full force and effect until May 17, 2024, when LA Heating's termination of the Subcontract became effective.

78.    ABM performed all of its obligations under the Subcontract.

79. At all relevant times beginning May 17, 2022, and continuing indefinitely thereafter, LA Heating has been, and continues to be, bound by the Confidentiality provision of the Subcontract.

80. Paragraph 29 of the Subcontract prohibits LA Heating from using or disclosing ABM's confidential information for any purpose other than on behalf of ABM.

81. LA Heating materially breached Paragraph 29 of the Subcontract by using ABM's confidential information, including information and knowledge of ABM's analysis, business plans, calculations, business strategies, and ABM's proprietary and confidential processes and procedures for responding to OCSD's RFPs, including without limitation information concerning the nature and extent of the work needed to complete the third phase of the OCSD Project, when it solicited ABM's business relationship with OCSD.

82. As a direct and proximate result of LA Heating's breaches, ABM has suffered damages in an amount to be determined at trial, including, without limitation, the profits ABM lost as a result of losing the RFP to LA Heating.

83. In addition to having suffered damages, ABM has been placed at risk of irreparable harm to its business reputation, goodwill, and the compromise of its confidential information which cannot adequately be redressed by monetary relief alone.

## COUNT III
**(Tortious Interference with Prospective Contractual Relations)**

84. ABM restates and incorporates herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

85. At all material times, ABM had a reasonable expectation of prospective contractual relations with its customer, OCSD, as well as other potential existing and potential customers of ABM.

86. At all material times, ABM had a reasonable expectation that LA Heating would abide by all terms of the Subcontract, including provisions concerning noncompetition and confidentiality.

87. At all material times, ABM had a reasonable expectation that LA Heating would keep ABM's confidential and proprietary business information regarding work analysis, calculations, plans, business strategies, and processes and procedures for responding to the OCSD's RFP's confidential, would not poach ABM's customers using ABM's confidential information or otherwise, and would not mislead ABM's customers by mischaracterizing the nature and extent of work needed to be performed.

88. At all material times, LA Heating had actual knowledge and notice of ABM's foregoing reasonable expectation of economic advantage, for example, LA Heating knew that ABM was competing for the third phase of the Project.

89. At all material times, LA Heating had actual knowledge and notice of ABM's foregoing reasonable expectation of a prospective contractual relationship, for example, LA Heating knew that ABM was competing for the third phase of the OCSD Project.

90. By using ABM's confidential business information to solicit ABM's customer, OCSD, LA Heating used improper means to interfere with ABM's actual and prospective contractual relations.

91. LA Heating used ABM's confidential and proprietary business information and plans to undercut ABM's bid and poach ABM's client.

92. As a direct result of LA Heating's interference, ABM's actual and prospective contractual relationships and contracts have been damaged or destroyed, as ABM would have been

awarded and received the full value of the new contract with OCSD but for LA Heating's interference.

93. Consequently, ABM has suffered and continues to suffer substantial damages and irreparable harm in an amount to be proven at trial, including, without limitation, the profits ABM lost as a result of losing the RFP to LA Heating.

## COUNT IV
### (Violation of the South Carolina Unfair Trade Practices Act; Code §§ 39-5-10 *et seq.*)

94. ABM restates and incorporates herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

95. LA Heating and ABM are both "persons" as defined by the South Carolina Unfair Trade Practices Act ("S.C. UTPA"). SC. Code § 39-5-10(a).

96. ABM's work with LA Heating in connection with a public project, and specifically, the Parties' dealings concerning the full scope and cost of services for completing the third phase of the Project constitute "trade" as defined by the S.C. UTPA. S.C. Code § 39-5-10(b).

97. The S.C. UTPA declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful, S.C. Code § 39-5-20(a).

98. LA Heating mischaracterized the nature, scope, and price of its services needed to complete the Project and as a result, depressed the price of its winning bid to the OCSD.

99. As a direct result of LA Heating's inaccurate bidding, ABM's actual and prospective business relationships and contracts have been damaged or destroyed, as ABM would have been awarded and received the full value of the new contract with OCSD but for LA Heating's conduct.

100. LA Heating's acts occurred during the course of trade or business, were material, and were capable of deceiving, and did deceive, members of the public in connection with a public

15

project utilizing public funds, and as a result, caused economic harm to the public. Moreover, LA Heating's actions are capable of repetition based on the business conduct and practices alleged herein.

101.  Consequently, ABM has suffered and continues to suffer substantial damages and irreparable harm in an amount to be proven at trial, including, without limitation, the profits ABM lost as a result of losing the RFP to LA Heating.

**PRAYER FOR RELIEF**

WHEREFORE, ABM Building Solutions, LLC respectfully requests the following relief:

a) Damages in an amount to be proved at trial in excess of the exclusive jurisdictional minimum, including, without limitation, the Development Fee and the profits ABM lost as a result of LA Heating's improper solicitation and poaching of ABM's client, OCSD;

b) Temporary, preliminary, and permanent injunctive relief enjoining LA Heating from competing with ABM and/or using or disclosing ABM's confidential information in violation of the Subcontract;

c) Costs and expenses otherwise recoverable under the law;

d) Pre-and post-judgment interest at the highest legal rate; and

e) Any other relief as deemed to be warranted by this Court.

Respectfully,

ABM BUILDING SOLUTIONS, LLC,

*/s/ Robert H. Jordan*
Robert H. Jordan (Fed ID 6986)
Email: robertjordan@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, SC 29403
Phone: 843-727-2650

And

Erik W. Weibust (*pro hac vice* forthcoming)
Adam Paine ((*pro hac vice* forthcoming)
Epstein Becker & Green, P.C.

16

125 High Street, Suite 2114  
Boston, Massachusetts 02110  
Tel: (617) 603-1100  
eweibust@ebglaw.com  
apaine@ebglaw.com  

Dated September 23, 2024        *Attorneys for Plaintiff ABM Building Solutions, LLC*